Case 9:10-cv-80037-JIC Document 1 Entered on FLSD Docket 01/13/2010 Page 1 of 10

FILED ELECTRONIC

Jan. 13, 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

GARY CHARLES BRESTLE,

    Plaintiff,

V.

Case No. _____

ISBELIA QUIJADA,
ABRAHAM QUIJADA,
MAURICIO QUIJADA,
AND FRED QUIJADA,

    Defendants.

**10-CV-80037-Cohn/White**

CIVIL ACTION, PURSUANT TO 18 U.S.C.
§ 1964(c) RACKETEER INFLUENCED
CORRUPT ORGANIZATION R.I.C.O.

COMES NOW, the plaintiff Gary Charles Brestle *pro se* *in forma pauperis*, in the above captioned matter, respectfully filing this Civil Action Pursuant to 18 U.S.C. § 1964(c), Racketeer Influenced and Corrupt Organization R.I.C.O., and alleges as follows:

JURISDICTION AND VENUE

Jurisdiction in this instant matter is alleged to be proper pursuant to 28 U.S.C. § 1331, and 18 U.S.C. § 1964(a).

Venue in this matter is alleged to be proper in the United States District Court for the Southern District of Florida, (West Palm Beach, Division), pursuant to 18 U.S.C. § 1965(a), inasmuch as defendants resides, is found, and transacts their affairs within the jurisdiction of this Honorable Court.

cat / div **WPB / 550 /**
Case # **10 CV 80037**
Judge **JIC** Mag **PA**
Motn Ifp **YES** Fee pd $ **NO**
Receipt # _____

## THE PARTIES INVOLVED

The plaintiff Gary Charles Brestle is an individual and private citizen, presently residing in Jesup, Ga., as a federal prisoner, (FCI/FSL 2650 Highway 301 South, Jesup, Ga.).

The defendants Isbelia Quijada, Abraham Quijada, Mauricio Quijada, and Fred Quijada are individuals that reside in Palm Beach, and Dade Counties. Florida, within the district of the United States District Court for the Southern District of Florida.

## OPENING STATEMENT

The plaintiff met defendant Isbelia Quijada sometime in mid 1998, at the Roasted Pepper Cafe, Boca Raton, Florida, (owned by the plaintiff).

Plaintiff and defendant, (Isbelia Quijada), were married mid July 1999, and resided together in South Palm Beach, Florida.

Prior to the marriage of Isbelia Quijada and the plaintiff Isbelia Quijada arranged two meetings so that the parents of Isbelia Quijada could perform due diligence regarding the plaintiff. The first meeting took place at the Delano Hotel, Miami Beach, Fl., between the plaintiff, defendant Isbelia Quijada, and the defendants mother Isbelia F. Quijada. The second meeting took place at the Galaxy Grill, Palm Beach, Fl.. In attendance were defendants Isbelia Quijada, Abraham Quijada, Mauricio Quijada, Fred Quijada, and mother Isbelia F. Quijada.

Plaintiff was advised by defendant Isbelia Quijada that her family-defendant Abraham Quijada, (father), and Isbelia F. Quijada (mother)-reside in Caracas, Venezuela, with a partime residence in Wellington, Fl.. The plaintiff is informed by defendant Isbelia Quijada that defendant Abraham Quijada is President of "Metalman Corporation of Venezuela", (which is one of the largest metal stamping companies in Latin America), manufacturing parts for Ford, General Motors, Chrysler, and A.M. General's Hummer line. The plaintiff is also told that the senior Quijada was the recipient of the "Order of Merit, First Class", in 1980, by a previous Venezuelan President, and was also a partner of Marc Rich, (pardoned by President Bill Clinton, and now Attorney General Eric Holder).

In mid to late 1999 shortly after President Hugo Chavez is elect to the office of President in Venezuela, the plaintiff is told by the defendant Isbelia Quijada that members of the "Venezuelan Secret Police" were at the residence of her mother and father, (a $1,000,000.00, two story penthouse on the outskirts of Caracas, (known as the "Country Club")). The "Secret Police" are present to arrest defendant Abraham Quijada, (according to the defendant Isbelia Quijada). The elder Quijada is not at home during the invasion, and is communicated with and given instructions to flee the country of Venezuela for the United States. Abraham Quijada is shortly thereafter <u>indicted</u> in Venezuela. (<u>Osimetalica, S.A. Abraham Quijada and Andi-Curri, Aruba v. Fucara</u>).

Plaintiff and defendant Isbelia Quijada meet with defendant Abraham Quijada shortly after the defendants arrival into the United States from the country of Venezuela. The meeting takes place at the Ritz Carlton, South Palm Beach, Fl.. At the meeting defendant Abraham Quijada claims to have $38,000,000.00 left behind in the country of Venezuela, due to his hasty exodus to the United States, and claims that the assets may now be frozen by the Venezuelan Government. The elder Quijada explains to the plaintiff that he effectively has no money, and asks the plaintiff to lend the defendant money. The plaintiff agrees to "loan" defendant Abraham Quijada money, with the agreement that all of the money be returned, ("plus"). Defendant Isbelia Quijada (plaintiff's wife), assure the plaintiff that these steps will be followed by her father, (Abraham Quijada).

"EMPTY PROMISES, PATTERN & CONTINUITY"

Beginning in June or July of 2003, when the plaintiff realizes that the money "promised" to be repaid by the senior Quijada, (and supported by his daughter), is not forthcoming plaintiff initiates numerous meeting involving the Quijadas, and where in most instances attorneys and accountants are present.

In the first meeting June or July of 2003, plaintiff, attorney Bruce W. Keihner, attorney Michael Blank, (Vice President, Jules Baer Bank, Palm Beach), Dennis Klienfeld, (accountant) senior Quijada, Mauricio Quijada meet at Jules Baer Bank to discuss amongst other issues, the securing of the senior Quijada's $38,000,000.00 "frozen" in the country of Venezuela, (according to all the defendants). Messrs. Blank and Klienfeld introduce the plaintiff and

defendant Abraham Quijada to a one time high ranking Isreali "Mossad" agent from Boca Raton, Fl.. Quijada and the plaintiff meet with the ex-"Mossad" agent at the office of Auto Solutions, (Boca Raton). Where the one time "Mossad" agent asks the senior Quijada for certain "documents" to further investigate the frozen funds. The ex-"Mossad" agent's company is providing security for certain individuals in the "Chavez" regime, making the situation easier, (in terms of access). However, defendant Quijada fails to produce the requested "documents" and information.

In the second meeting, sometime in February or March 2004, where defendant Quijada elects to meet with a private individual (Ralph Noe, Jr., of Pompano Beach, Fl.), instead of well known international litigator Pedro Martinez-Fraga, (Greenberg Traurig, Miami), defendant Quijada, and the plaintiff, from a meeting being conducted at Houstons Restaurant, (Pampano Beach), are introduced by Noe, (via cell phone) to two businessmen from Detroit, Michigan, (Billy and Jack Jacalone), who claim to have an on-going business in Caracas, Venezuela with numerous contacts within the Venezuelan Government, (in particular the federal agency "Fucara"). **Again**, the defendant Abraham Quijada is asked for certain "documents" and information concerning the $38,000,000.00 left behind, (and now supposedly "frozen"), in the defendants homeland. **And again** the defendant Quijada fails to produce the requested materials.

In late 2004 early 2005, defendants Mauricio and Abraham

Quijada along with the plaintiff, plaintiff's counsel Bruce W. Keihner, and Sid Eibel, (friend of attorney Keihners), (also a pilot, owning his own twin engine plain), and a supposed friend, (only known as "Carl") a close associate of Vicente' Rangel, (Vice President of Venezuela), arrange a meeting between "Carl" Eibel and Rangel on the Venezuelan Island of Margaritta. However, prior to the meeting the request goes out **once again** for documents and certain information to be provided by Quijada, and **once again** the documents are not produced.

In July of 2005, after several meeting with attorney Pedro Martinez-Fraga, (at the law firm of Greenberg Traurig, Miami), the plaintiff asks Martinez-Fraga to investigate the matter in Caracas, involving the Quijada's $38,000,000.00, (the plaintiff at this point has grown "extremely" concerned about the funds being returned, (but, because of his love for his wife continues to provide the Quijadas with funding, even though the plaintiff is also doubting his wife at this point). In a letter from Martinez-Fraga dated November 4, 2005, where Martinez-Fraga has contacted longtime friend and fellow attorney Daniel Vielleville, (of the law firm Baker & MacKenzie, Caracas), Martinez-Fraga atates, that through their "lobbying efforts", in contacting certain officials in Venezuela, they are "guardedly optimistic" about securing some sort of a meaningful recovery of the Quijada's funds in Venezuela. Martinez-Fraga goes on to say, for completeness sake he needs whatsoever tangible information in the form of "documents" that Quijada has concerning facility, real property, accounts receivable, assets of whatsoever, and at some point it will also

become indispensable for him to meet with Quijada to have him execute an affidavit, and also acquire permission to speak to Quijada's attorney in Caracas, (Jose Louise Tamayo)(whom the plaintiff has been <u>paying for</u> through-out the years), in fact in one part of Martinez-Fraga's letter he states: "<u>In addition, Mr. Tamayo, who, as you very aptly noted is "the voice of the opposition" is haplessly inadequate for this representation. It pains me to learn how little he has communicated to you about the case and yet what substantial fees you have tendered in an effort that was destined to fail from its inception</u>.

    The plaintiff asks Abraham Quijada and his wife to join the plaintiff and his wife for dinner at the plaintiff's home on this Island of Palm Beach. Not only do the Quijadas decline **again** to produce the requested "documents", but they also state <u>vehe-mently</u> that they will not help Martinez-Fraga. The plaintiff's wife refuses to intervein **knowing** that her husband has gone through painstaking events to lend the monies, now in excess of $3,500,000.00, (in checks, cash and wires)(illustrated DE#168, case# 05-cr-80215-KAM, USDC/SDFL, where the one defendant (Isbelia Q. Brestle), was a co-defendant)).

    When seeing the disappointment on the plaintiff's face, as the plaintiff walks into his home, after hearing the refusal of the defendants to cooperate. The elder Quijada approaches plaintiff once inside the home reaching to put his arm around him, stating that all the money will be repaid, for the plaintiff not to worry and that "we" were all going to "Live Like Kings". . .

## CAUSE OF ACTION
### GENERAL R.I.C.O. VIOLATIONS

The plaintiff alleges the following:

The defendants did unlawfully make "fictitious", "fraudulent" statements and representations to the plaintiff to acquire funds, (not caring whatsoever, if they injured the plaintiff's property or business), through a **"pattern"**, with **"continuity"**, (a critical ingredient which illustrates past conduct that by its nature projects the future with a threat of repetition. .), of racketeering activity to wit: **Mail Fraud,** in violation of 18 U.S.C. § 1341; Use of the mail or facility in interstate or foreign commerce to (1) distribute the proceeds of any unlawful activity, and (2) otherwise promote, manage, establish, carry on, or facilitate the management, or carry on, of any unlawful activity, in violation of 18 U.S.C. § 1952; engage in monetary transactions in property derived from specified unlawful activity, and **used** or **invested**, directly or indirectly, some part of such income in acquisition of any interest in, or the establishment or operation of, any enterprise, to wit: **Wire Fraud,** Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining **money** or **property** by means of "false" or "fraudulent" pretenses, representations, or "promises", transmits or causes to be transmitted by means of wire, radio, or television communicated in interstate or foreign commerce, for the purpose of executing such scheme or artifice.

### PREDICATE R.I.C.O. VIOLATIONS

The plaintiff alleges:

1) **Mail Fraud;** the defendants did unlawfully devise a scheme

or artifice to defraud or for obtaining money by "false" or "fraudulent" pretenses or representations. (by defendants) and did deposit in the U.S. Mail and caused to be delivered by U.S. Postal Service, <u>inter alia</u>, letters between 2001 through 2005[1], directed to the plaintiff, for the purpose of executing such scheme or artifice to defraud, or for obtaining money by "false" pretenses or representations, in violation of 18 U.S.C. § 1341.

2) **Wire Fraud**, the plaintiff further alleges that the scheme or artifice to defraud or for obtaining money by "false" or "fraudulent" pretenses or representations is executed numerous times between the years 2001 through 2005. (Previously illustrated, this instant action, Case# 05-cr-80215, [DE#168]).

All of the defendants were in one way or another (at their **own choosing**), involved in corporations with the plaintiff, where they derived income, in certain cases where the plaintiff will illustrate, the conducting of <u>illegal activity</u>.

All of the defendants are individuals of knowing intelligence, **(and did not proceed on any <u>authoritative</u> power)**, and schemed to "**LULL**" the plaintiff into a sense of complacency, to acquire funds.

The plaintiff was injured by the actions of the defendants in **both** his property and business.

### RELIEF REQUESTED

The plaintiff Gary Charles Brestle moves this Honorable Court to grant relief as follows:

To **grant** and **award** "treble" compensatory damages as authorized by 18 U.S.C. § 1964(c), in the amount of Ten Million Five Hundred Thousand dollars, ($10,500,000.00).

The plaintiff also respectfully demands a trial by jury.

FILED by __RB__ D.C.
ELECTRONIC
Jan. 13, 2010
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

RESPECTFULLY SUBMITTED, this 29, day of December, 20(

Gary C. Brestle, pro se
Reg. No. 75416-004
Federal Satellite Low
2650 Highway 301 South
Jesup, Ga. 31599

---

[1] The plaintiff has requested on numerous occasions through the "F.O.I.A." certain specific documents from the Federal Bureau of Investigation, in both Washington, D.C., and the "FBI" field office, West Palm Beach, Fl., which has been illustrated to the United States Court for the Southern District of Florida, (Bankruptcy Court included), on the docket. Which to date has been **denied.**